**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID No. 2112006391 |
| | ) | |
| CHRISTOPHER PORTER, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: February 9, 2026
Decided: March 27, 2026

**Findings of Fact and Conclusions of Law Upon Remand**

Andrew J. Vella, Esquire, Deputy Attorney General, Wilmington, Delaware, *for the State of Delaware.*

Patrick J. Collins, Esquire, Collins Price Warner Woloshin, Wilmington, Delaware, *for Defendant Christopher Porter*.

**GREEN-STREETT, J.**

1

## I.    Introduction

By order dated May 13, 2025 (the "Order"), the Delaware Supreme Court remanded this matter to this Court for findings of fact and conclusions of law regarding Christopher Porter's allegation that (1) his defense counsel maintained a conflict of interest; and (2) Mr. Porter never tendered informed consent to waive that conflict. This Court, in accordance with the Order, held an evidentiary hearing, and accepted post-hearing briefing from the parties. The Court's findings of fact and conclusions of law are set forth below.

## II.    Findings of Fact

### A.    Procedural History

On July 5, 2022, a Kent County grand jury indicted Mr. Porter on charges of Murder in the First Degree and Robbery in the First Degree.[1] After some delay at the parties' request, the Court scheduled trial for November 27, 2023.[2] Two attorneys from the Office of Defense Services ("ODS") represented Mr. Porter – J'Aime Rau, Esquire, and Joseph Halsey, Esquire.

At an office conference on November 22, 2023, the State informed the Court it intended to call two "jailhouse informants" who had previously been represented

---

[1] D.I. 4 (July 5, 2022).

[2] D.I. 23 (June 22, 2023).

by the Office of Defense Services.[3]  The State relayed to the Court that Ms. Rau previously represented one of the informants, potentially creating a conflict of interest.[4]  At that time, the State had not secured either informants' testimony.[5]  The Court requested the parties gather more information on the potential conflict, with the intent to address the matter at a future office conference.[6]

Before each day of the trial, the Court held an office conference with counsel to address any outstanding issues and discuss scheduling.[7]  At the office conference the first morning of trial, the State declared, "so Mr. Green – it was our understanding that he had an open matter but he does not."[8]  The State further indicated an attorney from the Office of Conflicts Counsel would be present for Mr. Green's testimony "out of an abundance of caution."[9]

---

[3] App. to Def. Post Hr'g Br. at A160-61.

[4] Id. at A161.

[5] Id. ("So the timing is certainly regrettable, but, if they were brought in Monday, we will be looking to obtain their cooperation and their testimony.").

[6] Id. at A164.

[7] See generally D.I. 43 (Nov. 27, 2023); D.I. 45 (Nov. 28, 2023); D.I. 46 (Nov. 29, 2023); D.I. 48 (Nov. 30, 2023).

[8] App. to Def. Post Hr'g Br. at A 184.

[9] Id.

Again, at the office conference, Ms. Rau explained she recently received a letter Mr. Green wrote to the State.[10]  Further, she discovered Mr. Green originally provided a statement to police in June 2022.[11]  Ms. Rau believed she represented Mr. Green in August 2023 on a robbery case that resolved via plea agreement to four months' incarceration.[12]  She stated:

> I wasn't aware at the time that he would – that he had information because I did not have the original interview at the time.  That was done 15 months prior.  It was just when the letter was sent to me from the State I became aware.  But, at that time, he also didn't have any open matters with my office or with me personally.[13]

Ms. Rau further indicated that, while she thought she raised the issue with Mr. Porter, she would like more time to consult with him about the potential conflict.[14]  Ms. Rau did not believe a conflict existed.[15]  The Court afforded Ms. Rau more time to speak with her client, and the parties proceeded to the first day of trial.[16]

---

[10] Id.

[11] Id.

[12] Id. at 185.

[13] Id.

[14] Id. at A186.

[15] Id.

[16] Id.

Later that day, the Court provided the parties with two cases – State v. Kent[17] and State v. Sykes[18] – cases involving potential conflicts of interest for witnesses previously represented by the Office of Defense Services.[19] The Court afforded counsel time to review those cases with the intent to address any potential conflict the next morning.[20] The Court further expected defense counsel to speak with Mr. Porter to "gauge where he was on the issue."[21]

At an office conference before the second day of trial, the Court asked the parties to address the potential conflict of interest regarding Mr. Green's testimony.[22] The State no longer believed a conflict existed, describing it as a "non-issue." The State based this belief on the case law provided by the Court as well as upon Ms. Rau's interpretation of any potential conflict.[23] Ms. Rau agreed with that representation from the State.[24] The Court requested Ms. Rau make a record,

---

[17] 2014 WL 5390481, at *1 (Del. Super. Sept. 3, 2014).

[18] 2005 WL 1177567, at *1 (Del. Super. May 2, 2005).

[19] App. to Def. Post Hr'g Br. at A198.

[20] Id. at A272.

[21] Id. at A274.

[22] Id. at A282.

[23] Id.

[24] Id.

5

including "very finite dates [and] depth of representation."[25] The Court further requested information regarding "which specific person at ODS [was involved in the various representations]."[26]

At an office conference before the third day of trial, the State informed the Court it intended to call Mr. Green to testify.[27] Defense counsel did not object to Mr. Green's testimony.[28] Ms. Rau stated she reviewed the dates she represented Mr. Green, but could not locate them that morning.[29] Ms. Rau also wanted to confirm Mr. Green did not have any open cases.[30]

The Court asked Ms. Rau, "did you discuss the matter with Mr. Porter?"[31] Ms. Rau replied that she had spoken with Mr. Porter and, "[t]here's no issue, Your Honor."[32] The Court deferred making a more complete record regarding the

---

[25] Id. at A283.

[26] Id.

[27] Id. at A343. The State declined to call the other "jailhouse informant."

[28] Id.

[29] Id.

[30] Id.

[31] Id. at A344.

[32] Id.

potential conflict of interest until Ms. Rau could provide the exact dates she represented Mr. Green and whether he had any open cases.[33]

At an office conference before the fourth day of trial, the State reported that Mr. Green would testify later that day.[34] The Court then provided a recitation of the status of any potential conflict of interest issue, including: (1) the State only intended to call one jailhouse informant – Mr. Green; (2) Ms. Rau, Mr. Porter's lead counsel, previously represented Mr. Green; (3) counsel for both the State and Mr. Porter determined no conflict existed; and (4) as Mr. Green was a former client, Delaware Rule of Professional Conduct 1.9 governed.[35] The Court then requested Ms. Rau "flesh out a little bit for the Court[,] and[,] for the record[,] your prior representation of Mr. Green."[36]

Ms. Rau informed the Court:

> Mr. Green was arrested on August 31, 2023. He had a case opened [sic] with the Office of Defense Services on September 5, 2023. I met Mr. Green at a preliminary hearing. There was a pre-indictment offer to Wearing a Disguise During Commission of a Felony. The recommended sentence at that time was for six months Level V followed by one year Level III. He took a plea on October 25, 2023, and that modification was modified to

---

[33] Id.

[34] Id. at 460.

[35] Id. at A461-63.

[36] Id. at A464.

7

four months Level V followed by one year Level III. At the time that the plea was entered, I did plea paperwork with him, including the Truth-In-Sentencing Guilty Plea form. At the time, he was aware that there was not a violation filed against him. I advised him that[,] with this plea, a violation can [sic] be filed against him, which[,] subsequently, I believe, a day or two after the plea, October 25, 2023, a violation was filed. [A different attorney from ODS] handled the Superior Court violation of probation on November 17, 2023. He was sentenced to one year Level III to run concurrent followed by one year restitution only.[37]

The Court inquired if ODS's representation of Mr. Green terminated before the commencement of trial, and Ms. Rau confirmed it had.[38] Ms. Rau reiterated the Defense did not believe a conflict existed.[39] The State concurred.[40]

The Court found no evidence that Mr. Green and Mr. Porter's matters were substantially related or materially adverse to each other.[41] The Court concluded no conflict of interest existed.[42] The State reiterated that a conflict attorney would represent Mr. Green during his testimony.[43] As a final point, the Court asked Ms.

---

[37] Id. at A464-65.

[38] Id. at A465.

[39] Id.

[40] Id. at A466.

[41] Id.

[42] Id.

[43] Id.

8

Rau if she discussed with Mr. Porter her prior representation of Mr. Green.[44]  Ms. Rau confirmed she had apprised Mr. Porter of the issue.[45]

Trial proceeded without any further discussion of the potential conflict of interest.  Mr. Green testified for the State, with Mr. Halsey handling the defense's cross-examination.[46]  The jury returned a guilty verdict on the lesser-included offense of Murder in the Second Degree, as well as Robbery in the First Degree.[47] For the Murder in the Second Degree offense, the Court sentenced Mr. Porter to 85 years at Level V, suspended after 65 years for descending levels of supervision.[48] For the Robbery in the First Degree offense, the Court sentenced Mr. Porter to 25 years at Level V, suspended after five years for two years at Level III.[49]

**B. Mr. Porter's Appeal and the Order**

On December 5, 2024, Mr. Porter filed a *pro se* letter with the Delaware Supreme Court alerting it to the potential conflict of interest issue based on Ms. Rau's representation of Mr. Green.[50]  Mr. Porter cited Delaware Rule of Professional

---

[44] Id. at A468.

[45] Id.

[46] Id. at A656.

[47] D.I. 54 (Dec. 5, 2023).

[48] App. to Def. Post Hr'g Br. at A881.

[49] Id.

[50] Id. at A886.

Conduct 1.7, and argued Ms. Rau's representation of Mr. Green created a concurrent conflict of interest.[51] Mr. Porter further asserted the conflict of interest manifested itself in an ineffective cross-examination of Mr. Green.[52]

Mr. Porter's appellate attorney from ODS ("Prior Appellate Counsel") subsequently filed a Motion to Withdraw as Counsel.[53] In her motion, Prior Appellate Counsel stated, "[a]fter reviewing the record, speaking with the client, and obtaining information from trial counsel, Counsel has determined that a conflict of interest pursuant to Rule 1.7(a) (concurrent representation) existed during trial counsel's representation of Mr. Porter."[54] The Delaware Supreme Court granted that motion, and appointed Appellate Counsel to represent Mr. Porter.[55]

Appellate Counsel filed an unopposed Motion for a Remand to Superior Court on May 12, 2025, requesting a remand to allow this Court to further develop the record regarding the potential conflict of interest.[56] Specifically, that motion requested the Court develop the record as to whether (1) Ms. Rau informed Mr.

---

[51] Id.

[52] Id. at A887.

[53] Id. at A890.

[54] Id.

[55] Id. at A892.

[56] Mot. for a Remand to Superior Court at 5.

10

Porter of her representation of Mr. Green before Mr. Green testified; and (2) "when [Mr.] Green's interests diverged from Mr. Porter's, and when trial counsel became aware of it."[57]   The Delaware Supreme Court issued the Order on May 13, 2025, remanding the matter to this Court.

## C.    Post-remand proceedings

This Court held an evidentiary hearing on September 16, 2025.  At that hearing, Mr. Halsey testified he joined Mr. Porter's defense team "pretty late towards the end."[58]   He did not recall ever discussing with Ms. Rau whether her representation of Mr. Green posed a conflict of interest.[59]  He did not recall if he or Ms. Rau ever discussed the potential conflict with Mr. Porter.[60]   He could not remember why he handled the cross-examination of Mr. Green.[61]

Ms. Rau testified that, at the time of Mr. Porter's trial, she did not know Mr. Green had previously been represented by ODS before her representation of him.[62] She agreed ODS previously represented Mr. Green on a robbery charge, to which he

---

[57] Id.

[58] Tr. of Ev. Hr'g at 9.

[59] Id. at 10-11.

[60] Id. at 11.

[61] Id. at 12.

[62] Id. at 19.

entered a plea on February 9, 2022.[63] When asked if she represented Mr. Porter at a preliminary hearing on February 11, 2022, she responded, "I don't recall, but I'm assuming I did because we do vertical representation."[64] She acknowledged her representation of Mr. Green included charges for which he was arrested on August 31, 2023.[65]

During Ms. Rau's representation of Mr. Green, he agreed to enter a guilty plea to resolve his case on October 25, 2023.[66] That plea triggered a violation of probation on Mr. Green's previous case with ODS.[67] When shown a copy of the docket for Mr. Green's previous case with ODS, she agreed it evidenced he had an open violation of probation as of November 17, 2023.[68] Ms. Rau agreed that, for the entirety of the time she represented Mr. Green, she also represented Mr. Porter.[69]

---

[63] Id. at 20; see Joint Exhibits for Ev. Hr'g at A102.

[64] Id. at 21.

[65] Id. at 23.

[66] Id.

[67] Id.

[68] Id.

[69] Id.

Appellate Counsel produced a letter written by Mr. Green to Ms. Rau dated October 19, 2023 (the "Green Letter").[70] The Green Letter detailed conversations Mr. Green alleged occurred with Mr. Porter wherein Mr. Porter admitted committing murder.[71] Mr. Green represented he could provide details about the case incriminating Mr. Porter, and that Mr. Green qualified as a "past proven reliable informant of the State."[72] The Green Letter made it clear Mr. Green intended to provide information to the detriment of Mr. Porter in exchange for a favorable outcome in his own "current legal woes."[73]

Ms. Rau did not recall receiving the Green Letter.[74] Appellate Counsel stated he obtained the letter from her file, and questioned Ms. Rau regarding how the letter would have gotten into her file without her seeing it.[75] As Mr. Green sent the letter before he entered a plea with Ms. Rau's assistance, Appellate Counsel asked if Mr.

---

[70] Id. at 24; see Joint Ex. for Ev. Hr'g at A120.

[71] Joint Ex. for Ev. Hr'g at A120.

[72] Id.

[73] Id.

[74] Tr. of Ev. Hr'g at 25.

[75] Id.

Green mentioned the letter at the time he entered his plea.[76] Ms. Rau denied that Mr. Green ever mentioned it to her.[77]

Appellate Counsel next referenced a letter Mr. Green wrote to the State dated October 26, 2023.[78] In that letter, Mr. Green made similar statements regarding his knowledge of Mr. Porter's case and his desire to provide assistance against Mr. Porter.[79] Mr. Green referenced his pending violation of probation hearing scheduled for November 9, 2023.[80] The State provided this letter to Ms. Rau on November 17, 2023.[81]

The State sent Ms. Rau copies of audio recordings from various witnesses, including Mr. Green, on November 21, 2023.[82] Ms. Rau stated, "when I received this letter from [the State] with the Cary Green insert, that triggered the, 'Oh my gosh, I just – I represented him at prelim and he's a witness in my murder case.'"[83]

---

[76] Id. at 26.

[77] Id. at 27.

[78] Id.; Joint Ex. for Ev. Hr'g at A118.

[79] Joint Ex. for Ev. Hr'g at 118-19.

[80] Id. at 119.

[81] Id. at A117.

[82] Id. at A110.

[83] Tr. of Ev. Hr'g at 30.

Ms. Rau did not recall being aware of Mr. Green's statements to police before receiving that letter.[84] That letter indicated Mr. Green provided a statement to police regarding Mr. Porter on June 30, 2022.[85]

Ms. Rau did not recall speaking with Mr. Porter "on or prior to the 27th of November" about her representation of Mr. Green presenting a possible conflict of interest.[86] Ms. Rau could not recall any conversation she had with Mr. Porter regarding Mr. Green.[87] Ms. Rau conceded her records of the trial did not include any notation that such a conversation occurred.[88] She confirmed that, in an email to Prior Appellate Counsel dated December 12, 2024, she informed Prior Appellate Counsel she could not recall discussing her representation of Mr. Green with Mr. Porter.[89]

---

[84] Id.

[85] Joint Ex. for Ev. Hr'g at A110.

[86] Tr. of Ev. Hr'g at 36.

[87] Id. at 40-41.

[88] Id. at 41.

[89] Id. at 43.

Ms. Rau agreed ODS "is treated as a law firm for purposes of evaluating conflicts of interest."[90] She concurred it "would be a fair statement" to say she did not understand that at the time of Mr. Porter's trial.[91] Ms. Rau could not recall why she let Mr. Halsey handle Mr. Green's cross-examination – the only witness Mr. Halsey questioned during the trial – but testified, "I think if I did let him handle that witness, it was probably because I had realized I just represented him at the pre-indictment plea."[92] Ms. Rau testified ODS did not represent Mr. Green for his testimony during Mr. Porter's trial.[93] Ms. Rau agreed ODS subsequently represented Mr. Green at a violation of probation hearing on April 28, 2025.[94] Ms. Rau testified she considers the representation of a client to terminate when his case resolves by plea or trial, and that any subsequent representation at a violation of probation hearing would be a new representation, not a continuous representation.[95]

---

[90] Id. at 46.

[91] Id.

[92] Id. at 47-48.

[93] Id. at 52.

[94] Id. at 56; see Joint Ex. for Ev. Hr'g at A105.

[95] Id. at 58-59.

Mr. Porter testified he first became aware of Mr. Green's potential testimony against him "a few days before I started trial."[96] Mr. Porter stated Ms. Rau advised him of the letter Mr. Green wrote to the State offering his assistance.[97] Mr. Porter denied Ms. Rau ever discussed her representation of Mr. Green with him leading up to, or during, trial.[98] Mr. Porter testified he "would've [sic] not been okay" with Ms. Rau continuing to represent him had he known she also represented Mr. Green.[99]

From Mr. Porter's recollection, the first time he became aware of Ms. Rau's representation of Mr. Green occurred during a meeting on the day of his sentencing.[100] He testified he wrote to the Delaware Supreme Court because Prior Appellate Counsel advised him he could not raise the issue of Ms. Rau's potential conflict of interest until seeking post-conviction relief.[101]

---

[96] Id. at 66.

[97] Id.

[98] Id. at 68. Mr. Porter's and Ms. Rau's recollection up to this point in the case's chronological timeline is consistent. Their recollections differ on the existence or depth of any conversation related to Ms. Rau's representation of Mr. Green.

[99] Id. at 68-69.

[100] Id. at 69.

[101] Id. at 70.

## III. Conclusions of Law

### A. Conflicts of Interest

Delaware Rule of Professional Conduct 1.7 outlines that a concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client[,] or a third person or by personal interest of the lawyer.[102]

If a concurrent conflict exists, a prerequisite to the lawyer's continued representation of those clients requires "each affected client gives informed consent, confirmed in writing."[103] Delaware Rule of Professional Conduct 1.10 imputes conflicts under either Rule 1.7 or Rule 1.9 to all lawyers within the same firm.[104] Delaware decisional law regards ODS as a law firm for purposes of determining conflicts of interest.[105]

---

[102] DE R. RPC Rule 1.7(a).

[103] DE R. RPC Rule 1.7(b)(4).

[104] DE R. RPC Rule 1.10(a).

[105] Santucci v. State, 223 A.3d 94 (Del. 2019).

Based on the timeline discussed above, it appears to the Court that ODS represented Mr. Green and Mr. Porter concurrently. Further, during that concurrent representation, Mr. Green's and Mr. Porter's interests diverged and became adversarial. Specifically, Mr. Green's letters to both ODS and the State offering assistance in Mr. Porter's trial in exchange for favorable outcomes in his own cases demonstrate a clear conflict between Mr. Green's representation and Mr. Porter's.

Ms. Rau cannot recall discussing her representation of Mr. Green with Mr. Porter. During the trial, however, Ms. Rau represented several times that she spoke to Mr. Porter about the issue, and Mr. Porter did not object to her continued representation. Mr. Porter denies that conversation took place. The Court finds Ms. Rau likely mentioned the issue to Mr. Porter, but the Court cannot conclude that a robust discussion of the issue took place between Ms. Rau and Mr. Porter. The Court bases that finding, in part, on Ms. Rau's testimony that indicates she may have misunderstood the scope of the conflict created by ODS's representation of Mr. Green beyond her own personal participation in his case.

Moreover, Delaware Rule of Professional Conduct 1.7 required Mr. Porter's waiver to the conflict of interest be in writing. The record reflects no such written waiver exists. Further, because Ms. Rau testified she did not fully appreciate the potential conflict, the Court finds any waiver Mr. Porter would have given at the time would not have been fully informed. Certainly, as Ms. Rau did not recall seeing

19

the Green Letter before Mr. Porter's trial, it seems unlikely that Mr. Porter would have been aware of that letter and its implications.

The State's Post-Hearing Brief does not address the scope of Ms. Rau's ODS colleague's representation of Mr. Green. Nor does it attempt to reconcile its assertion that no conflict existed, despite the existence of the Green Letter. The Court agrees with the State that Mr. Halsey's performance during his cross-examination of Mr. Green "is of no moment" at this stage.[106] That Ms. Rau testified it would have made sense to allow Mr. Halsey to conduct that cross-examination because of her recent representation of Mr. Green suggests, however, that her decision making during the trial was affected to some degree by her prior representation of Mr. Green.

## IV. Conclusion

The Order, in its adoption of Mr. Porter's Motion for a Remand to Superior Court, instructed this Court to resolve whether Ms. Rau informed Mr. Porter of the potential conflict of interest. Based upon the record now before the Court, this Court concludes Ms. Rau did not fully inform Mr. Porter of the extent of the concurrent conflict of interest. The Order further instructed this Court to resolve when Mr. Green's interests diverged from Mr. Porter's. Based upon the record, the Court finds their interests diverged when Mr. Green sent the Green Letter to Ms. Rau offering to testify against Mr. Porter in exchange for a favorable resolution of his own case.

---

[106] State's Post Hr'g Br. at 7.

20

Accordingly, **the Court finds a concurrent conflict of interest existed, and that Mr. Porter did not provide informed consent to ODS's continued representation of him.**

**IT IS SO ORDERED.**

_____

Reneta L. Green-Streett, Judge

CC:    Superior Court Prothonotary
       Supreme Court Clerk, C.A. No.:  241,2024 *(Via File & Servexpress)*

21